UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:24-cv-80027-MIDDLEBROOKS

DAVID D. GARRIDO,
And other similarly situated individuals,

    Plaintiff(s),
v.

PRO SERVICES GROUP, LLC,
a/k/a POOL PRO, and
ADAM EDISON, *individually*,

    Defendants.
_____/

## ORDER ON MOTION FOR DEFAULT FINAL JUDGMENT

THIS MATTER is before the Court on Plaintiff's Motion for Default Judgment, filed May 16, 2024. (DE 25). For the following reasons, I will grant the Motion in part.

### I. BACKGROUND

Plaintiff David D. Garrido filed this action against Defendants pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, on January 11, 2024. (DE 1).[1] On January 23, 2024, Plaintiff served Defendants with the Complaint and filed proof of service. (DE 5; DE 6; DE 15; DE 16). Defendants failed to answer the Complaint, and the clerk entered default against both Defendants on February 22, 2024. (DE 13).

Originally, this action was before Judge Aileen Cannon. (DE 2). However, Judge Cannon transferred this case to me after it became apparent that this matter related to a prior case that I had dismissed: *Garrido v. Pro Services Group, LLC*, Case No. 23-cv-80986. (DE 26). I

---

[1] Plaintiff voluntarily dismissed Defendants Tropical Pool Heating, Inc., a/k/a Jupiter Pool Repair, Mary Jo Mairano, and Steven D. Mairano. (DE 23). Accordingly, this Motion for Default Judgment applies only to Defendants Pro Services Group, LLC, and Adam Edison.

ultimately dismissed that case without prejudice for failure to timely effectuate service under Federal Rule of Civil Procedure 4(m).[2] Plaintiff never flagged for the Court that the case before Judge Cannon was related to the case that was originally before me, which is required by Southern District of Florida Local Rule 3.8 and Internal Operating Procedure Rule 2.15.00. Judge Cannon sua sponte transferred this case to me only after I spoke with Plaintiff's counsel at a hearing in another matter. At the hearing, I discussed with Plaintiff's counsel concerns that I have over the number of errors I have noticed throughout his cases in the Southern District of Florida.[3]

In this Motion, Plaintiff moves for default judgment against Defendants. (DE 25). In Plaintiff's Motion for Default Judgment, he seeks $16,812.72[4] in statutory damages and liquidated damages as well as $7,780.00 in attorneys' fees and costs as the prevailing party. (DE

---

[2] After I dismissed the case for failure to effectuate service, I also entered an order striking a motion for default judgment that had been filed on the docket after I dismissed the case. I noted that the motion was completely inapplicable and represented a procedural posture that was inaccurate. *See Garrido*, Case No. 23-cv-80986, DE 13.

[3] I note that yet again, in this case, Plaintiff has submitted filings that contain scrivener's errors, including referring to the liability of third parties who do not actually appear to be parties in this lawsuit. This is a recurring problem in counsel's practice, which appears to rely on extracting default judgments from defendants in FLSA actions. In the default context especially, errors can have a negative impact on a court's analysis of damages or liability because district judges are confined to the allegations in a plaintiff's pleadings without benefit of counterargument.

[4] In Plaintiff's Proposed Order Granting Default Judgment, he breaks this total damage award down as $2,674.86, equaled in liquidated damages, for a total of $5,349.72 in unpaid overtime wages; $731.50, equaled in liquidated damages, for a total of $1,463.00 in unpaid minimum wage damages; and $5,000.00, equaled in liquidated damages, for a total of $10,000.00 in retaliation damages. (DE 28-1 at 12). Although I calculate the damages award independently within this Order and find that the requested total for unpaid overtime wages is accurate, Plaintiff's legal memorandum within the proposed order does not support this total amount. *See* (DE 28 at 10) (failing to continue the overtime analysis after calculating an entitlement of just $1,786.50 in overtime wages for the first 12 weeks of work).

25 at 7). Defendants have not appeared, answered the Complaint, responded to the Motion, or otherwise defended against Plaintiff's claims in this action.

## II. LEGAL STANDARD

When a party fails to plead or otherwise defend against an action for affirmative relief, the clerk of the court must enter a default against the party against whom the judgment was sought. Fed. R. Civ. P. 55(a); *see also* Fed. R. Civ. P. 12(a)(1)(A)(i) (providing that a defendant must respond within twenty-one days after being served with the summons and complaint). If the plaintiff's claim is for a sum certain or an ascertainable sum, then the clerk, upon the plaintiff's request and upon an affidavit of the amount due, must enter a judgment by default. Fed. R. Civ. P. 55(b)(1). In all other cases, the party entitled to judgment must apply to the district court for a default judgment. Fed. R. Civ. P. 55(b)(2). A court may enter a default judgment against a defendant who never appears or answers a complaint, "for in such circumstances the case never has been placed at issue." *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986).

Further, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. *See Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005); *Nishimatsu Constr. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). However, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis omitted). Therefore, in considering whether to enter default judgment, a court must first determine whether the complaint states a claim for

relief. In addition to the pleadings, the court may also consider evidence presented in support of the motion for default judgment, including affidavits. *Cf. Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 111 (6th Cir. 1995); *Super Stop No. 701, Inc. v. BP Prod. N. Am. Inc.*, No. 08-61389-civ, 2009 WL 5068532, at *2 n.4 (S.D. Fla. Dec. 17, 2009) (noting that "unchallenged affidavits are routinely used to establish liability and damages" for default judgment).

Federal Rule of Civil Procedure 55(b)(2) provides that a district court "may conduct hearings" to determine the amount of damages on a motion for default judgment. But a court may exercise its discretion in determining whether a hearing is necessary to assess the applicable damages. *See Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 912 (11th Cir. 2011). If a plaintiff's damages can be mathematically calculated to an ascertainable value, an evidentiary hearing is not required. *See Organizacion Miss Am. Latina, Inc. v. Urquidi*, 712 F. App'x 945, 948 (11th Cir. 2017).

### III. ANALYSIS

#### A. Service of Process

Under Federal Rule of Civil Procedure 4(e)(1), an individual may be served in accordance with state procedures "for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under Federal Rule of Civil Procedure 4(h)(1), a corporation may be served according to state law governing service on an individual or by delivering the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1).

Here, Plaintiff effectuated service on the two Defendants in Florida. Pursuant to Florida Statute § 48.031, service of process on an individual may be made by leaving copies at

4

the individual's usual place of abode with a resident who is fifteen years of age or older and informed of the contents of the papers to be served. Fla. Stat. § 48.031(1)(a). Plaintiff submitted a Return of Service and Amended Return certifying that Defendant Adam Edison was served by leaving copies with him personally. (DE 5; DE 15).

Florida Statute § 48.062 governs service on a Florida limited liability company, such as Defendant Pro Services Group, LLC. Service may be made on the LLC through its registered agent. *See* Fla. Stat. § 48.062(1). If service cannot be made on the LLC's registered agent, a summons may be served on a member, manager, or designated employee as set forth in section 48.062(2). Plaintiff served Pro Services Group, LLC, through its registered agent, Defendant Adam Edinson, on January 23, 2024. (DE 6; DE 16). Plaintiff worked at Defendant's warehouse located at 509 Commerce Way West, Jupiter, Fl 33458, where Defendant/registered agent Adam Edison was located. As this process comports with Florida Statute § 48.031 for service on an individual, it also meets the requirements for service on an LLC's registered agent under § 48.062. Therefore, it appears that Plaintiff has properly served Defendant Pro Services Group, LLC, in this matter.

**B. Liability**

1. <u>Unpaid Overtime</u>

In Count I of the Complaint, Plaintiff alleges that Defendants failed to pay him required overtime compensation. (DE 1 ¶¶ 30–50.) Under the FLSA, with limited exceptions, employees involved in interstate commerce must be compensated with overtime wages at a rate of one and one-half times their regular pay for hours over forty worked per week. *See* 29 U.S.C. § 207(a)(2). To establish a prima facie case under the FLSA for failure to pay overtime compensation, a plaintiff must demonstrate that: (1) an employment relationship existed, (2)

the employer was engaged in interstate commerce covered by the FLSA, and (3) the employee worked over forty hours per week but was not paid overtime wages. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008) (citation omitted).

Here, Plaintiff presents facts to support each element of his claim for unpaid overtime wages. He asserts that the Defendants employed him full-time for a period of twenty-one weeks. (DE 1 ¶ 32). Thes twenty-one weeks occurred from approximately January 15, 2023, to June 9, 2023. (*Id.* ¶ 12). He also claims that during his employment, the Defendants were engaged in interstate commerce. (*Id.* ¶¶ 10–11). Lastly, the Plaintiff alleges that he worked more than forty hours each week but did not receive pay for the overtime hours. (*Id.* ¶¶ 16–17). Plaintiff also pleads that Defendant Adam Edison is the owner, officer, and manager of Pro Services Group, LLC, and had "operational control" over Plaintiff's employment. (*Id.* ¶ 5).

Based on Plaintiff's allegations, Defendant Edison is jointly and severally liable as an employer under the FLSA. *See* 29 U.S.C. § 203(d) (defining "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee"); *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013) ("A corporate officer is personally liable as an FLSA employer if he has operational control of a corporation's covered enterprise, which may be involvement in the day-to-day operation of the company or direct supervision of the employee at issue.") (punctuation and citation omitted); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) ("[T]he FLSA contemplates that a covered employee . . . may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the

employee's employment."). Therefore, Plaintiff has pleaded facts that establish both Defendants' liability on Count I for unpaid overtime wages.

### 2. Minimum Wage

In Count II of the Complaint, Plaintiff contends that Defendants also failed to pay him the required minimum wage. (DE 1 ¶¶ 51–71). Under the FLSA, employers must pay a minimum wage to employees engaged in interstate commerce. *See* 29 U.S.C. § 206(a). A plaintiff seeking unpaid minimum wages under the FLSA must establish: (1) the defendant employed the plaintiff; (2) the plaintiff engaged in interstate commerce, or the defendant was an enterprise engaged in interstate commerce; and (3) the defendant failed to pay the plaintiff the applicable minimum wage. *See Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 682 (M.D. Fla. 2008) (quoting Eleventh Circuit Pattern Jury Instructions-Civil 1.7.1 (2005)).

In the Complaint, Plaintiff claims that the Defendants employed him full-time for twenty-one weeks. (DE 1 ¶ 12). He also states that the Defendants were involved in interstate commerce during his employment. (*Id.* ¶¶ 10-11). Plaintiff further alleges that he worked twelve weeks of five days with 52.5 working hours each, and nine weeks of 47.5 hours each. (*Id.* ¶¶ 13–16, 54–57). He asserts that at the time of his resignation, Defendants refused to pay Plaintiff for his last week and two days of work, or a total of 66.5 hours. (*Id.* ¶ 59). Such facts plausibly establish Defendants' liability as to Count II.

### 3. Retaliation

In Count III of the Complaint, Plaintiff alleges that Defendants reduced his working hours in retaliation for his complaints about unpaid minimum wages and unpaid overtime hours. Therefore, he was forced to leave his employment. (*Id.* ¶¶ 72–98). Plaintiff argues now, in this Motion, that such facts establish a constructive discharge, which permit him to recover additional

7

liquidated damages.

The FLSA prohibits employers "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). This antiretaliation provision includes both verbal and written complaints of FLSA violations. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). To successfully plead a claim for retaliation under the FLSA, a plaintiff must allege: (1) he engaged in an activity protected by the FLSA; (2) he suffered an adverse action from the employer; and (3) a causal connection between the protected activity and the adverse action. *S e e   Wolf v. Coca-Cola Co.*, 200 F.3d. 1337, 1342 (11th Cir. 2000).

Whether a "constructive discharge" qualifies as an "adverse employment action" under the FLSA remains an open question. The Eleventh Circuit does not appear to have directly addressed this. *See Perez v. Anastasia M. Garcia, P.A.,* 701 Fed. Appx. 938, 940 (11th Cir. 2017) (affirming a district court's decision in favor of an employer when the plaintiffs alleged constructive discharge retaliation under the FLSA but failing to specifically address the vitality of constructive discharge as a theory under FLSA). But even assuming it can be, in other statutory contexts, "[c]onstructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job. . . . A plaintiff must show 'the work environment and conditions of employment were *so unbearable* that a reasonable person in that person's position would be compelled to resign.'" *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (emphasis added) (discussing pleading requirements for constructive discharge under 42 U.S.C. § 1981(a)). Further, for constructive discharge to qualify as an adverse employment action, the protected activity must be "a but-for

8

cause of the alleged adverse action by the employer." *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Plaintiff's allegations are insufficient to plausibly plead a claim for retaliation. To begin, the only allegations that appear in Plaintiff's Complaint that could possibly support he engaged in statutorily protected activity are that Plaintiff "disagreed with the lack of pay for overtime hours, and he complained to his superiors on multiple occasions." (DE 1 ¶ 21). Although oral complaints can fall within the gambit of the FLSA's antiretaliation provision, the statute requires "some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Kasten*, 563 U.S. at 14. As no other fact appears within the four corners of the Complaint demonstrating the context of these verbal complaints so as to convince the Court that Defendants were placed on fair notice that Plaintiff was asserting his rights under the FLSA, *see id.* at 14–15, I decline to find Plaintiff has plausibly pleaded he engaged in protected activity.

But even further, Plaintiff's allegations are insufficient to establish that Defendants retaliated against him for engaging in such verbal complaints. Plaintiff states that "his working hours were reduced" after he complained. (DE 1 ¶ 22). He further states that he was "forced to leave his employment, because he was working overtime hours without compensation." (*Id.* ¶ 23). He then goes on to conclude that "Defendants willfully and maliciously retaliated against Plaintiff by engaging in retaliatory action materially adverse to a reasonable employee and with the purpose of dissuading him from exercising his rights under [the FLSA]." (*Id.* ¶ 96). But such a conclusory allegation is, of course, entitled to no weight. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (establishing an entitlement to relief "requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). The factual allegations, which essentially boil down to not receiving overtime compensation and having hours reduced, do not establish that Plaintiff's work conditions were sufficiently severe, such that they became intolerable for any reasonable employee. *See Bryant*, 575 F.3d 1281, 1298 (11th Cir. 2009); *see also Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001) ("To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were 'so intolerable that a reasonable person in [his] position would have been compelled to resign.'"); *cf. Hartsell v. Duplex Products, Inc.,* 123 F.3d 766, 775 (4th Cir. 1997) ("[W]hen an employee voluntarily quits under circumstances insufficient to amount to a constructive discharge, there has been no adverse employment action.") (internal quotations omitted).

"[N]ot everything that makes an employee unhappy is an actionable adverse employment action." *Bass v. Bd. Of County Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001). An employee is not entitled to overtime hours, and Plaintiff includes no allegations about how much Defendants reduced his hours by after he complained. If Defendants reduced his hours down to forty hours a week, the maximum an employee can work before an employer is forced to pay overtime, a reasonable person would not feel compelled to resign. In short, Plaintiff has wholly failed to plead allegations of "such pervasive conduct" that occurred "in the . . . period of time between the protected activity and [Plaintiff's] resignation[]," to plausibly plead a retaliation claim under the FLSA. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1167 (11th Cir. 2008).

### C. DAMAGES

Having concluded that there is a sufficient basis in the pleadings to find Defendants liable under the FLSA for unpaid overtime wages and unpaid minimum wages, I now turn to the issue of what amount of damages Plaintiff is entitled to.

#### 1. Unpaid overtime

The "regular rate" is the basis for overtime computation. *See* 29 U.S.C. § 207(a)(1) (requiring employers to pay employees "one and one-half times the regular rate at which he is employed" for hours over 40 per week). Where an employee is paid a regular, constant salary for fluctuating hours, the regular rate per hour may be calculated by dividing "that weekly salary by the number of hours actually worked." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1311 (11th Cir. 2013) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 (1942)). However, if "an employee is employed on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates" and dividing that total "by the number of hours worked in the week for which such compensation was paid." C.F.R. § 778.11(a). In order to calculate overtime, a court should add "a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week." *Id*.

Although Plaintiff fails to provide pay stubs, he claims that he was paid "a piece rate according to the number of pools cleaned." (DE 25-1 ¶ 10). Although Plaintiff does not provide that actual piece rate, he claims that he received "an average of $1,250.00 weekly." (*Id.* ¶ 7). He breaks down his specific work hours by stating that he worked 12 weeks of 52.5 hours weekly, and 9 weeks of 47.5 hours weekly (DE 25-1 ¶¶ 8–9).

This affidavit would support a finding that the regular rate for the first 12 weeks was $23.81 per hour ($1,250.00/52.5). One-half this regular rate would be $11.91. As a result, his overtime wages for 12.5 hours of overtime each week for 12 weeks is **$1,786.56** ($11.91 x 12.5 O/T hours=$148.88 x 12 weeks= $1,786.56). His regular rate for the last 9 weeks was $26.32 per hour ($1,250.00/47.5). One-half this regular rate would be $13.16. As a result, his overtime wages for 7.5 hours of overtime each week for 9 weeks is **$888.30.**

In total, Plaintiff is entitled to **$2,674.86** in unpaid overtime compensation.

2. Minimum Wages

Plaintiff argues that he is entitled to the Florida minimum wage, which is $11.00 an hour, as opposed to the federal minimum wage of $7.25 an hour. In support, Plaintiff cites to 29 C.F.R. § 778.5, which provides that where a higher minimum wage "is applicable to an employee by virtue of such other legislation, the regular rate of the employee . . . cannot be lower than the applicable minimum." *Id.*

Counsel for Plaintiff has made this argument before the Court in the past, and, like I have before, I find the argument misplaced. Although perhaps Plaintiff is entitled to continue reraising this issue despite prior adverse rulings, I will not deviate from the position I've previously taken (which is consistent with the position taken by many other district courts) until the Eleventh Circuit speaks to the issue. The FLSA contains no provision requiring that courts award plaintiffs the higher of either the state or federal minimum wage. The regulation that Plaintiff cites requires *employers* to comply with state laws, but Plaintiff points to no binding case law holding that a litigant seeking relief under the FLSA should be entitled to anything but the federal minimum wage. In fact, a review of case law within this district and other districts in Florida demonstrate that most courts have held otherwise. *See e.g., Bowers v. Trading Card World LLC*, No. 22-

22897-CIV, 2023 WL 5154316, at *4 (S.D. Fla. July 26, 2023) ("[Plaintiff], however, has failed to take into account that, under the FLSA, he is only entitled to the federal minimum hourly wage."); *Bosmeniel v. T.S.W. Residential & Commercial Services, Inc.*, No. 823CV00714CEHTGW, 2023 WL 7411542, at *5 (M.D. Fla. Oct. 27, 2023), *report and recommendation adopted*, No. 8:23-CV-714-CEH-TGW, 2024 WL 551945 (M.D. Fla. Feb. 12, 2024) (collecting cases likewise holding that a plaintiff asserting a claim for relief only under the FLSA is only entitled to the federal minimum wage). Had Plaintiff wanted to assert a claim under the corresponding Florida Minimum Wage Act, he could have. Because he chose not to, he is entitled to recover the federal minimum wage of $7.25 an hour.

Plaintiff was a nonexempted, full-time, pool technician from approximately January 15, 2023, to June 9, 2023, or 21 weeks. (DE 1 ¶ 53). At the time that he left, Defendants failed to pay Plaintiff for one week and two days of work, which Plaintiff states totaled 66.5 hours. (*Id.* ¶ 59). Accordingly, Plaintiff is due $7.25 an hour for 66.5 hours of work. ($7.25 x 66.5). That would mean Plaintiff is entitled to **$482.13** in unpaid wages under the FLSA for the seven days he worked without compensation.

      3. Liquidated Damages

Plaintiff argues that he is entitled to liquidated damages on all three FLSA claims he has asserted. To begin, the FLSA allows a court to grant "equitable relief as may be appropriate to effectuate the purposes of [the antiretaliation provision]." 29 U.S.C. § 216(b). Because I do not find that Plaintiff has adequately pleaded a retaliation claim, I decline to award Plaintiff "$5,000.00 in back pay and liquidated damages in an additional equal amount, totaling $10,000.00," which is the sum he seeks for constructive discharge. (DE 28-1 at 11).

With regard to the minimum wage and overtime claims, the FLSA dictates that, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). A liquidated damages award is only inappropriate if an employer demonstrates its good faith in failing to adhere to the provisions of the FLSA. *See Spires v. Ben Hill Cnty.*, 980 F.2d 683, 689 (11th Cir. 1993). In contrast to another provision of the FLSA, where an employee must affirmatively plead that an employer acted willfully to invoke the three-year statute of limitations, "the good faith issue on which liquidated damages turns, [places] the burden . . . on the employer." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008). Because Defendants have not appeared and affirmatively demonstrated their good faith in this action, Plaintiff is entitled to liquidated damages for both his overtime claim and minimum wage claim. This equals **$3,156.85**.

### D. Attorney's fees and costs

The FLSA states that Plaintiffs are entitled to reasonable attorney's fees as a prevailing party. *See* 29 U.S.C. § 216(b). Plaintiff claims he is entitled to $7,050.00 in attorney's fees.

An attorney fee award is calculated by multiplying the number of hours reasonably spent by the reasonable hourly rate to arrive at the lodestar figure. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking an award of fees must submit adequate documentation of hours and rates in support or the award may be reduced. *Id.* Attorney Zandro Palma represents Plaintiff in this matter, and he claims a lodestar of $7,050.00. (DE 25 ¶ 14). Attorney Palma submits an affidavit supporting the fee request (DE 25-2), stating that his attached billing records accurately reflect the time spent on the case (18 hours) and that the number of hours were reasonable and

14

necessary, given the nature of the litigation (DE 21-2 ¶¶ 11-12). The filing details his qualifications and experience, and it includes ledgers detailing his billable hours in the prosecution of this matter.

The long-standing law in the Eleventh Circuit is that a "court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir.1940)). Further, "the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." *Id.* (citations omitted). At this point, I have become familiar with Zandro Palma's legal practice. As a result, although I know he is an experienced and qualified attorney, I can recognize that there is little in the way of differences between any of the complaints, affidavits of indebtedness, or default judgment motions that he files from case to case. Although there is nothing inherently wrong with a practice that relies heavily on the use of form documents, it becomes an irresponsible means of litigating a case when the filings contain many errors that misrepresent the state of the docket, the procedural posture of a case, or even the names of the parties. Further, this case in particular illuminates the concerns that I have. Although I understand that a busy practice can lead to missed litigation deadlines, judicial resources were wasted between Judge Cannon and me when counsel failed to inform either of us about the fact that this matter related to a previous one of mine, and independent communications were held between chambers after I inquired of Plaintiff's counsel about this at a separate hearing.

But even aside from these issues, I do not believe that the record supports a finding that 18.0 hours were reasonably expended litigating this matter. The only substantive documents that

were filed throughout the course of this entire litigation were the Complaint and the Motion for Default Judgment. Accordingly, although a prevailing Party is entitled to its attorneys' fees under the FLSA, I decline to award Mr. Palma the full amount that he seeks. Because Mr. Palma does not demonstrate how the drafted motion for clerk's entry of default, default judgment motion, or affidavit of indebtedness totaled 4 hours or substantively differ from previous forms that he has relied on,[5] I will subtract those hours in calculating the total attorney fee award.

Further, I note some apparent redundancy in the billing submissions. For instance, Mr. Palma logs six entries at the beginning, and it is unclear what the differences in time spent between the first six entries are: Mr. Palma represents that he spent 1 hour on "initial client intake," 1 hour "reviewing the case," 1 hour "gathering information," and 1 hour planning and preparing "data for Complaint." He then logs his 2 hours for drafting the Complaint and 1 more hour for "manage data/files: Processing file after drafting Complaint." Because Mr. Palma fails to provide adequate descriptions, I cannot discern how these similar-sounding tasks differed. Therefore, I am not convinced that the first seven hours of work in this case were reasonably expended, and I will only award him 1 hour for all of the above-described billing tasks combined, all of which seemingly involve acquiring and preparing data for the Complaint. After this reduction, the total award will be 8 hours for Mr. Palma's time spent on this matter. That totals **$3,600.00.**

### E. Motion for Costs

Plaintiff requests $730.00 in costs pursuant to 29 U.S.C. § 216(b). As part of this Motion, he claims that "the request for costs lists the costs of the process server, the filing fee, and

---

[5] I note that in other cases, Mr. Palma has represented a similar amount of time spent drafting a final default judgment motion and the affidavits to support it. However, the end product is remarkably the same from case to case. Thus, I do not find that sufficient support in the record for the claimed hours of work.

copies." (DE 28-1 at 11). Plaintiff then cites to a docket entry in support of his alleged expenses. However, the docket entry cited by Plaintiff to support this cost amount is an order from Judge Cannon directing Plaintiff to serve the unserved Defendants. Because this citation is wholly inapposite, I will not consider it.

Southern District of Florida Local Rule 7.3(c) requires that motions for costs "attach copies of any documentation showing the amount of costs and shall be supported by a memorandum not exceeding ten (10) pages." The only support that appears anywhere on the docket for the fact that Plaintiff has had to incur any fees in this matter are invoices attached to Mr. Palma's affidavit of the attorney fees and billable hours he incurred in this matter. Mr. Palma includes five invoices that each demonstrate a $60.00 fee for service of process, which would ostensibly total $300.00. (DE 25-2 at 8). Notably, however, Plaintiff does not explain why five fees for service of process were incurred when only two Defendants in this matter were ever actually served. (*See* DE 5; DE 6). District courts have granted reimbursement for multiple service of process attempts but only where the requesting party has explained the necessity for multiple attempts. *See Lebron v. Royal Caribbean Cruises, Ltd.,* No. 1:16-CV-24687-KMW, 2021 WL 3007191, at *3 (S.D. Fla. June 28, 2021), *report and recommendation adopted,* No. 16-24687-CIV, 2021 WL 3005648 (S.D. Fla. July 15, 2021); *Mid-Continent Cas. Co. v. JWN Constr., Inc.*, No. 17-80286-CV, 2019 WL 8402872, at *4 (S.D. Fla. July 29, 2019), *report and recommendation adopted*, No. 9:17-CV-80286, 2019 WL 8402871 (S.D. Fla. Dec. 5, 2019), *aff'd*, 823 Fed. Appx. 923 (11th Cir. 2020). Because Plaintiff does not provide any explanation of these invoices, I will only award costs for service of process on the two defaulted Defendants in this matter.

No other invoices appear anywhere on the docket. Accordingly, because I cannot find that Plaintiff has provided any support for his claim that he incurred a docket fee, or that any necessary "copies" were made in this matter, I decline to award those costs. In other words, Plaintiff is awarded **$120.00** in costs.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

(1) The Motion for Default Judgment Against Defendants (DE 25) is **GRANTED** as to Counts I and II.

(2) Final Judgment will issue by separate order.

(3) The final judgment shall reflect that Plaintiff is entitled to **$3,600.00 in attorney's fees, $120.00 in costs, and $6,313.98 in unpaid overtime and minimum wage fees**.

**SIGNED** in Chambers, in West Palm Beach, Florida on August 7, 2024.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record